May it please the court. My name is Kimberly Albrow and I'm here on behalf of the appellant Leonard Oliver. The issue that is before the court today is one that the court asked us to brief related to whether rule of appellate procedure 4b can be invoked sua sponte by the court. I think there are two options before the court today. I think the court can decline to recognize or decline to decide that it has sua sponte authority to raise the 4b issue that it's an issue that's best left to the parties and if it's not raised the court can move forward on untimely appeals or the court will recognize that it does have the power to sua sponte dismiss appeals under 4b but it still should decline to in my brief where the court has sua sponte dismissed appeals under the Mitchell case out of the Tenth Circuit so I am skeptical that the court would say it doesn't have the power to sua sponte dismiss appeals but I do think that's a good option and I can give you a few reasons why if the court decides to go in that direction. The Mitchell case distinguished the 4b rule from the other similar rules in bankruptcy court and under the criminal rules of Contrick and Eberhardt cases and one of the reasons they... Do you agree 4b is not statutorily based? I agree. And that differentiates it from 4a? Correct. And the court has been clear to say that's a jurisdictional rule? That is correct. I think it's very clear I mean the Supreme Court has decided this issue this court has decided the issue that this is not a jurisdictional and mandatory rule but it is a inflexible claim processing rule. The Tenth Circuit recognized that that is it's not jurisdictional based but nonetheless found at least within a couple cases the basis to say they could act sua sponte. That's correct. And nonetheless do it. Was that in the context the Tenth Circuit seems to indicate they had to do it or it's not a mandatory sua sponte I take it or is it not? I don't think it's a mandatory sua sponte and at the time Mitchell was decided and even as recently as this week I have checked to see if there is another court that has analyzed this issue as in-depth as the Tenth Circuit and there isn't. The cases that I cited in the brief that this court decided based on Mitchell are all unpublished very short opinions and there's no in-depth analysis but Mitchell had a couple of reasons why it decided that it is based in clear case law that this court has inherent a power to do a lot of things but one of the reasons is they wanted finality in criminal convictions and this a case like an appeal if it involves a criminal defendant it seems important that the court would be able to address any issues that might be wrong and Mitchell didn't fully explain why it would drain the court's resources any more in a criminal case than it would drain the bankruptcy court or the district courts resources when they decided in Eberhardt and Kontrick that they would not sua sponte enforce those rules. Also Mitchell made a comparison to the statute of limitations and they distinguished the statute of limitations which according to Mitchell all the circuits that have addressed it have said that the statute of limitations is left for the parties to decide and there really is a distinct really not a distinction at all from the 4B and the statute of limitations in that it can certainly cause strain on both the district court and appellate resources if a case shouldn't have been brought in the first place because of the statute of limitations but neither party raises it and the court goes forward so then the district court spends all its time potentially going to trial on that case then there's potentially an appeal after that so I didn't understand the Mitchell distinction between the statute of limitations and rule 4B. So I think there's a basis there for this court to decide it doesn't have the sua sponte power to dismiss appeals. The DC Circuit although without very much explanation has also held that it just doesn't have the power to enforce claims processing rules sua sponte. So this court can choose to treat rule 4B like the rules in Eberhardt and Kontrick. And in Eberhardt the court noted the Supreme Court noted that the the rule the criminal rule of procedure at issue there the burden should be on the parties and it would in that case it was the government that didn't try to raise the rule until it was on appeal and it enforcing the rule would admonish the government for not timely raising this issue and they also noted that it's very unlikely that the government wouldn't raise this issue at some time or another so it seemed like the suit that what the Supreme Court was saying is that the sua sponte issue may not arise very often because it's very likely that whatever party it would benefit from raising this timeliness issue would do so. So your position is you would not like us to dismiss this sua sponte? That's correct. But even if let's say we go with you your position where is that gonna lead you? You're not gonna prevail on the merits are you? No I filed an Andrews brief in this case so there were four issues that I went through rule 11 issues there was actually an issue in his case which was related to the relevant conduct and the drug weights but it didn't make any difference because the answer is are you going to prevail on the merits? No I wouldn't prevail on the merits. What's going to happen here today I mean I'm trying to figure this out you come in you're arguing a procedural point but the end of the day you pretty much conceding there's nothing you're going to gain from that if you win other than maybe to help the jurisprudence. Well the court asked us to brief this issue this is not an issue I raised so I did my best to present the best argument I could. It's like improved administration of justice around here but I think it from your perspective it almost seems like somebody else ought to be arguing this because your client is not gonna unless you're gonna come in forcefully argue the merits of it there's nothing gonna happen good to him today other than the goodness of knowing that he helped justice and I don't think that's what your client wants. Well that's correct but I'm sure that he would like you to decide his case on the merits to the extent that that he would at least have been heard by this court. Okay so now we are there and we now have Anders but if I say now okay let's assume we will not dismiss it tell us what to do with this case. Well you have to review it Anders and dismiss. Unless you find another issue that that you believe is meritorious. Well couldn't what do we just assume without deciding that the court would not sui sponte dismiss this. We do that all the time we do stuff like that all the time we don't even decide that sui sponte issue and then say Bennett nevertheless will dismiss it. And I believe I cited some cases in my brief as as support for why sui sponte dismissal isn't a good thing I mean in part this is an issue that will affect probably my future clients and other clients but like I said I was asked to brief this issue I did the best that I could on behalf of my client. Well I recognize your job also I want to make clear if if the other side agrees that 4b is not jurisdictional then it falls upon us to determine if sui sponte is available to us but in any event we've got cases that have looked at stuff sui sponte and decided not to dismiss it so we we've gone both ways on it it's almost a discretionary call from what I can see. I'm still trying to see what we were gained from it I know we asked you to brief it but I'm trying to see what's going to be gained here today and I do go back to the I tend to believe strongly I know you were asked to brief this but when it comes to your client he probably didn't care about this sui sponte thing he probably cares more about the Paris of it but not enough to have done it because he didn't file anything with the anesthetic. He didn't file any additional stuff. He did not file anything. He hasn't done anything else? No he hasn't but again if this court determines that it has that's the second part of my argument today if the court determines that it does have sui sponte authority to dismiss then as noted in Mitchell it should be done sparingly and that's when judicial resources and administration are implicated. I can get you there I'm good with it I think you let's say assuming we decide we do have it even if we were to not exercise it the outcome is dismissed. That's correct in this particular circumstance. What can you add to that I'm trying to I'm trying to feel something here other than and I'm not criticizing you but where are we with this? You know Mr. Litter and Mr. Oliver filed his case and untimely and I was asked to take the case which I did and I looked thoroughly through his case and made the argument on his behalf that I could and even though it was in the form of an Anders brief you know Anders versus California stands for the proposition that if a client wants to file. I'm telling you you've done an incredible job what you've been asked to do but I think what you've been asked to do is give an academic argument. Well Mr. Oliver. I don't know what more you can add to it right now I really don't. Okay. But I mean I don't want to I wanted to speak for my colleagues. Well let me just ask a question so if we decide that we have we do have an inherent authority to dismiss the case but decide as a matter of course the government initiates some kind of paper or pleading to dismiss it where do we draw that line? Is it after the filing of the notice of appeal? After the appellant files his brief? Well and that's what I was going to address if that in my brief I pointed out I think the latest that the court has accepted that a court in this country has accepted that I could find a motion to dismiss of this type under 4B was at the at the time that the government's response was due. In their response of pleading it the government's responsive brief the court has allowed the motion to dismiss to be raised then but in this case and the reason why I say Mr. Oliver even if you decide you can sui sponte dismiss Mr. Oliver's case should not be dismissed is because this case has been pending for two years. I filed his brief the government filed its Anders letter never raised the motion to dismiss and the government can file a motion to dismiss I mean they're well aware at the time that the notice of appeal is filed whether or not they did it's untimely they know that at the time and so they can file a motion before I ever file a brief they didn't do so in this case and then we were asked to do supplemental briefing by the court which we did up to this day no motion to dismiss has been filed so I think with the case having been pending for two years with briefs having been filed I think the court has looked through the case to a certain degree and already expended resources on the merits or lack thereof of Mr. Oliver's case because it was held in abeyance twice and there was a reason for that because the case similar to the cases which it was held in abeyance for and then the court also recognized that this issue should be briefed so I think that in Mr. Oliver's case that it should be decided on. The reason I ask that is because I've often frustrated in a different context where the appellant has signed a waiver of the right to appeal and nevertheless files a brief sometimes an Andrews brief and the government does nothing we specify an issue we find something and at that point the government decides we're going to invoke the waiver and it seems like a extraordinary waste of resources so your position in this context is that we that only if the government responds at that point it's appropriate to decide whether or not to dismiss. I think that should be a consideration of the court if it wants to invoke its sua sponte power that at some point the government has to make an affirmative motion to dismiss and once the briefs are filed I think that the idea behind being able to exercise the sua sponte power those reasons no longer exist because the resources have been expended. I've been appointed on cases where they were untimely I knew that at the time I was appointed but I still have I have the obligation to file the brief and once I mean I know that's my work product that's the burden is on the defendant or the appellant at that point not on the court but once the court has looked through the briefs to the point that they asked for supplemental briefing or had the opportunity to review all the briefs that have been filed and nothing has been asserted then I would say that the sua sponte power should weigh in favor of the appellant and it would not be dismissed. You were talking about the Mitchell case and this standard of implicating judicial resources and you know as I read that opinion it seemed a little bit upside down in the sense that it suggests that the more difficult the cases the more likely it is to be dismissed if it's an implicate judicial resources so the presumption should be that we should hear it if it's a more difficult case it implicates judicial resources takes too much time and we shouldn't hear it that doesn't sound right to me. Do you have a view about that? I would agree there were a lot of things about the Mitchell case that didn't make sense to me that that's one of them and and as I said the the statute of limitations issue and that it's a finality of criminal appeals that doesn't make any sense to me because that's someone's liberty at issue and it seems like the court would think that is just as important if not more important than the monetary issues that are usually at issue like the bankruptcy rule in Contract and the criminal procedure rule in Eberhardt. My time is expired but if the court has other questions. Thank you. Thank you. Good morning, your honors. May it please the court. My name is JD Rowell. I'm from Columbia, South Carolina and I represent the government in this case. Your honors, I agree with opposing counsel. This case really presents two questions. One, does this court have the inherent authority to exercise or to dismiss an ante that is filed out of time? What's the answer? Yes, sir. Absolutely. The second question I would submit, your honor, is should you exercise that inherent authority in this case? In this case, it doesn't matter. Well, your honor. You're going to probably agree it's going to be dismissed on it. Yes, I do. So you're okay if we wrote an opinion that says, okay, we got the right to do it but in this instance, even if we did it, did not do it, we dismissed the people. I would certainly be okay with that, your honor, because I first and foremost, I think. Why would we write anything else? We don't need to write anything else. Well, you only reach issues you need to reach. Well, your honor, I would submit that this court and by my account, and I don't fancy myself a Westlaw expert, but I believe this court and the members of this panel have exercised this authority to dismiss cases that are very similar procedurally. And we've done the opposite, too. Yes, sir. So it's gone both ways. And I think both are examples of the court exercising discretion to use this inherent authority. It wasn't just about this case. A lot of work has been asked of the court to do it. In the first instance, now you want us to do it sui sponte, which means we got to go through it and do the work there. On the other side, the defendant has filed an indiscretion, which is to say we can't find any issues. But so now you're saying, court, come and look and see if there's any issues in it. So on both sides, you're just asking us to look at this case. But the government side, first, forgive us for not having done this or filed this motion and do it sui sponte. The other side, we can't find issues, which there may not be any issues there. I'm not saying there are. But it says, court, you go do the work and see if there's any issues. So counsel from both sides have just pointed it over to the court. Yes, sir. That's correct, isn't it? I think that is a fair assessment. And I know for a fact that this is my case. I handled it at the trial level. If I had it to do over again, hindsight being 20-20, I certainly would have raised it in my response. You've satisfied my question. You can answer it. I don't imagine this is the case, but is there some sort of policy in your office that you're not going to respond to an Anders brief no matter how late? No, sir. And to be frank with the court, if we get an Anders appeal, and I will speak for myself first, when we get an Anders appeal, the review is sort of cursory. I freely admit that. It's a cost-benefit analysis for me handling the load that I handle. In discussing this matter with our appellate chief, we became aware of this court's exercising this authority. And in looking at it again, hindsight being clearer than when you're reacting to it in real time, we see where the court has gone. If I were to end this brief, didn't the court ask for a supplemental briefing? Didn't the court ask for something first, and then you didn't respond to that? It was when the supplemental brief came up, you brought it up. I'm not sure that that's the case, Judge Winn. And if it is, I apologize. My understanding of the procedural history was that... In other words, this whole business to respond to really kind of came from the court. Oh, absolutely. I don't dispute that at all. The court... My understanding of the procedural history is that the defendant filed an Anders brief, we submitted the letter indicating that we would not file a responsive brief, and then the court ordered us to answer this question, which was whether or not you had the inherent authority to dismiss it. I think Judge Winn is correct, if I remember, at least even after we issued that order, which maybe you considered that to be an invitation rather than an order, it required a second letter to get the government to respond. And if that is the case, I certainly apologize. That was just an oversight on my part. Again, Your Honor, I apologize for not knowing that, and I also apologize for not responding. I guess the point is, why doesn't the government simply move to dismiss these cases? Or if it doesn't, why shouldn't we assume that the government is content to have the case heard on the merits? Your Honor, I do think we should. I do think we should review the case and ask that it be dismissed based on a timeliness grounds. As to the question of whether or not the government should be content for the court to hear it on the merits... Well, I think my point is, if you don't move to dismiss, then why shouldn't we assume that you have no objection to the court hearing the case on the merits? Because, Your Honors, that goes to the question and the points that I think Mitchell makes, that this court should have the power to control its dockets, to determine whether or not cases use resources to uphold finality in criminal cases, really to look at issues that are not so much in the party's interest, but in the court's interest. But we're not in the business of prosecuting people. We don't determine who gets charged. We don't determine how cases are being prosecuted. And it's clear, this is not a jurisdictional rule. Agree with that, right? Yes, sir. Absolutely. It's a claims processing rule. Yes, sir. And the difference, of course, if it's a jurisdictional rule, subject matter jurisdiction, you can bring it up any time. Yes, sir. Go to Supreme Court and bring it up up there. You're fine. You can bring that. But not claims processing rule. Yes, sir. You can't do it. So it becomes discretionary. I don't know where we're going with this argument today. I'm just trying to understand what we're going with it. But it seems like to me it's a done deal. But maybe we'll continue. Yes, sir. Well, let me say, ask some questions here. I think you can figure out. I don't think I'm talking out of school. Whatever we do here today, speaking to the Chief of the Court, it's going to be a published opinion. I sort of guessed that. Yes, sir. Have you figured that out? Good. Maybe I do know what I'm doing. It's going to be a published opinion. And obviously, in a published opinion on this area, we're looking for guidance going forward. And I appreciate both of you and your colleague have been forthright in terms of trying to help us. We need help here. And that is this. I think we both agree we have the power to do it. Yes, sir. The other question is, we haven't reached the, should we do it? And if we should, should we do it uniformly? And that's the question because I think part of justice is fairness. If we have, since we have the power, if we're going to do it sua sponte, then the court, should the court say, okay, we can see from the record here, it's untimely. Sua sponte, dismiss. All of them. Because once you peep, then you're not making a fairness thing. You're peeping to see, well, maybe there's some merit here. Maybe not. Then that's a different basis. Should we peep and say, we do it when we are interested in it? Or we do it when we're not interested in it? The other way of saying it, should we just say routinely, we look at it, it's untimely. Government is out of the equation. Sua sponte, dismiss because of untimeliness. So, can you help us? Should we look for the line in the sand that's fair to every case? When I say fair, in the sense of everybody's treated the same way. You're untimely, we can see it from the record. Sua sponte, gone. Or do we do it case by case? Well, we know we can do it, but here, we don't do it. Because for whatever reason, and the alchemy of it is very mixed, and it's sort of a question. So, I'm going to guidance from you. You're the government. You obviously make a decision, and I'm not going to get into that, whether you're making a time analysis, a resource analysis, when you don't do it. For whatever reason, that's part of your executive function. You can decide to stay mute or not. The question is, help us. Should it be a line in the sand, untimely? Sua sponte, gone. Or should it be case by case? Because we're going to try to guide the fourth circuit with this published opinion. Help us. What do you think? Well, Judge, candidly, I think this court has demonstrated, I think there is some unpublished precedent out there. Yeah, no, no, you're right. Unpublished, and cut that precedent off. It's unpublished. Yes, sir. Period. It's not precedent. We're looking for, I'm telling you, this is going to be the published opinion. Yes, sir. Help us write it. You have a chance to have your finger along with us today. How should we pin it? Well, Judge, I think the Mitchell case is very instructive. The Mitchell case, first, I think, I don't know if it's first or second, but the main prong, or one of the main prongs that it looks at, is how untimely the appeal is. Oh, then you're going by case by case. Yes, sir. I do think it's a case by case analysis. In this case, and perhaps it's helpful to look at this case. It seems like if it's more untimely, the government should have a better understanding that it's untimely. I mean, if it's only like a few days untimely, that's one thing, but if it's four years or whatever down the road, what is the government thinking? Yes, sir. Don't you? But the government is basically demur. In Virginia, we call it just a demur. So what? We don't care. And you have a right to do that. We can't really control that. So I'm trying to address what we can control. Because in a perfect world, you'd look at all of them and say, oh, it's untimely, court dismiss it. But you don't. For whatever reason, we can't really. That's an executive function. But we can have a judicial function that might make you wish you had, or maybe not. But the point, though, is what do you think the court should do? Now you're suggesting to me we should do it based on a temporal metric. This is too so old, so untimely, we'll do it. So then we start getting into what? Is it a month? Is it a year? What is the temporal metric then if we use what you're suggesting? And, Your Honor, believe you me, it would be much easier for me to say dismiss every case that's untimely. I mean, I think a bright line rule makes it easier. So why not suggest? Why are you hesitant? Well, and quite frankly, Judge Gregory, it was your comment about fairness. You know, if you look at this case, this case has somewhat of a tortured history. And I know we're talking about facts specific and we're talking about a case-by-case basis. But this defendant, for example, filed the appeal three years, eight and a half months later, after a 2255 had been heard underneath, where he raised many of the same issues, where the district court reached some of the same issues at 2255, and then you have an Andrews brief. And so, you know, in that case, and many of the cases that come before the court in this situation, it's fairly easy to determine how serious or what issues there are underneath. This court, and again, I hate to look back at other cases, but this court has looked at some other cases where there were not Andrews briefs, where there were more meaty issues on appeal. And while I'm a prosecutor, I love a bright line rule as much as the next guy because I don't have to think too much. I wish I hadn't said that. No, I understood it. I understood it in the context. I'm going to hear that one again, I'm sure. However, your comment on fairness, if we're talking about the court exercising an inherent authority to manage what comes in and what y'all deal with, in an instance where the government has truly dropped the ball, if the court has an inherent power, it seems like you ought to have the discretion to exercise it. Nowhere is court, whenever we drop the ball, come back and fix it for us. No, sir. When we drop the ball, so if we raise it, I think the cases stand for the proposition that if we move to dismiss, that the court is without the authority to hear it. If we move to dismiss, based on the fact that it is untimely. Dealing with the instance where you move to dismiss is where you don't move to dismiss. Yes, sir. Yes, sir. That's what I'm saying. You're saying that whenever you just don't do your job of moving to dismiss, we just ought to come in and exercise our authority, even when you didn't even point it out to us later. It's not like you brought it up to us later on appeal. Just go through it and when we're doing our analyst brief, says, oh, wait a minute here. There's an issue here at time. We just should dismiss it then. No worries, the government's filing an analyst brief too. On both sides. You're just saying, we're not even going to review this. You go ahead and review it. We looked at it. We don't see any errors. Go ahead and review it yourself. And maybe that might be the issue, is when we do an analyst brief review and you didn't present it this way, are we obligated also to review it from the government's perspective, that you didn't find any errors in it? I'm not sure I understand your question. What about that one? Well, I'm saying when we do an analyst brief review, which the defendant says, what we do then is we're obligated an analyst to then go through it, see if there's anything there. And I don't think I've seen a case that says we go through it looking for errors that would favor the government too. No worries. You see what I'm saying? Yes, sir. I do. Just the thought. Would you object to the other side of the bright line? And that is, we'll just stay out of it completely. Leave it to the advocate. You didn't raise it. In all cases, we will reframe prudential type jurisdiction. Restriction. We just stay out of it. That's the bright line. Would you be in favor of that? No, sir. Because I do think the court has the authority to- Oh, yeah. We recognize the power. The published opinion said, yes, we have the authority. It's not jurisdictional. These are just claim processing type. But we determined that in the sense of honoring the old sacred type of idea of advocacy, even advocacy, one side didn't object, didn't raise it. We will not use sua sponte. We'll adhere it on the merits. Would you be in objection to that? And just so I make sure I understand how you're framing it, Judge Gregory, we have the power to exercise a dismissal sua sponte for being untimely. But we are going to, in an opinion, state that we will never exercise it. Something to that effect? Right. It's difficult to me to see how you would recognize the authority, and then in a published opinion say, however, we're choosing to never exercise this power. So we have the power, but we're never going to use it. It almost seems to undercut the recognition of the authority. And the reason- Well, they're two different questions. One is power to, other one is should. We determined that we should not exercise that power that we have. I would just imagine that for the reasons cited in Mitchell and perhaps others that I haven't thought of or that other courts haven't thought of, that there would come a time when this court would want to exercise that power for reasons that are not related to the party's interests. So we shouldn't tie our hands with a hard, fast rule? Yes, sir. I mean- But you recognize you don't have a dog in that fight. You're just trying to help us out. Yes, sir. I mean, I think if you're going to have the power, you ought to at least have the discretion to use it when you think it's appropriate. Okay. The dissent in Mitchell, if I remember, Judge Lucero posited a standard of dismissal as the preferred resolution except in cases involving extraordinary circumstances. What do you think of that? Again, I mean, it ultimately boils down to what the court decides is an extraordinary circumstance. I think the majority talked about it in the context of special circumstances. So it's, you know, if I'm correct, Judge Diaz, I think it's, it all, once the court decides that it has the authority, it's always going to be up to the court to determine how to exercise that authority. And so, whether- We're following up on Judge Gregory's analysis if the, if we're, because as I understand that that is the second example that he posited puts the onus on you, the government, to move to dismiss and we decline to exercise our sua sponte power, we could put a caveat to that and say we decline to exercise our sua sponte power unless the government moves to dismiss except in extraordinary circumstances. I'm trying to think through that. So, we're not going to, we're not going to exercise sua sponte unless there's some so make yours, the exception will be exercising it as opposed to the other way around, saying that we normally will use it as they'll be the default to do it unless there's other ways. So the onus is the other way around. The exception has to be there's some reason that we should do so as opposed to a special reason not to do so. It's the positive versus the negative. Which side do you think is better? Don't forget fairness resonated with you. Go ahead. Yes, sir. I'm trying to think of concrete examples when, which would trigger exceptional circumstances. We'll decide that. Yes, sir. You can't write everything in our opinion now. I'm letting you write, but don't try to tear it away. But the fact that it is exceptional and obviously case law will begin to contour that as they go. But for the most part, we understand that we have the power. And when you don't go forward and raise it, we won't do so unless there's an exceptional reason to do so, such as finality issues, ways, so stale, those kind of things like you talked about here. That would be the types of exceptionality. My example, my counsel may not want to hit us, but we might reach that's the exceptionality does exist here and we dismiss it. Or we don't find it here and we don't, but you see, we get the analysis of going forward so we'd have precedent. Don't you think that's the fairest way to perhaps do this? This is a workshop rather than an oral argument today. Judge, I see my time has expired. I'm the chief and I asked you the question, so you're okay. Okay. I don't have a problem with that standard, Judge. As you articulated it, it does seem to be a fair sort of resolution to this. You acknowledge that you have the authority. The almost default is to hear the case on the merits when the government fails to exercise its motion to dismiss. Right. But... Unless there's an exceptional reason we should not do so. Like finality and all those other just prudential type things that prudential, you know, economy. In this case, you're right, because the habeas comes in between. You could have this, you know, paradox universal. You know, something happened in the habeas that makes it inconsistent with it. Now, it is still alive. So, but right. Do you think that might be some workable? Yes, sir. I do think that would be a very fair resolution and certainly gives the government an incentive to look more closely at appeals and raise it when we think it's appropriate. And I would certainly... I'm going to do it anyway. Let me tell you what gives the government more incentive and what probably is the most workable. To readily understand plain rule you can make. And that is to treat jurisdictional type claims different from these type of claims, the claims rule type claims. And insofar as saying that if you fail in a claim of this type, in a matter of this type, to make the motion to dismiss, court doesn't like statute of limitations. You just don't review it. And the worst case scenario is, guess what we do? We just look at the merits. That's all. All you're saying here is it's a way not to look at the merits. But all this does is if we say, no, we're not going to respond to it because you didn't make the motion, and this is not a jurisdictional one, and it's a bright line rule, then you will understand. You don't need to know if it's extraordinary circumstance. You don't need to know if there's some factors you need to consider. You don't need to balance case by case. We'll know exactly in every case what's going to happen. If you fail to make that motion, like in the statute of limitations, we go into the merits. That's clean cut, isn't it? It's definitely clean cut, Your Honor. And that would give the government a lot of incentive to not do it again. No, no question, Judge. No question. If Your Honor still have any other questions, thank you very much. Thank you for your help. Counsel? Thank you, Your Honor. Just briefly, I did want to address Judge Gregory's question to the government, even though it wasn't addressed to me, about whether you should automatically dismiss when it's untimely. And I would say the answer is an emphatic no. And the reason is because sometimes the government will agree to waive any kind of timely issues. They may agree that the issue is worth hearing, and part of it is because of this fairness issue. And there's a Fourth Circuit case, Rice v. Rivera. I believe I cited it in the brief. But in that instance, the rule at issue was a district court rule, and the government agreed to it. So that's one of the in the first instance, I believe it should be the parties that raise it. In Rice v. Rivera, this court did recognize that the right should be raised by the parties and can be forfeited if it's not. So I think that tends to lead toward not having that bright line rule where they're automatically dismissed. But I do believe that fairness is an important issue because sometimes, you know, in a criminal defendant's case, his liberty is at issue. And if the court is, or if the government is willing to agree with that, even though it may be more work on the parties involved and on the court, I think fairness is an important issue to consider when deciding how to fashion this 4B timeliness issue. I don't understand. The government was very, I thought, very helpful to you. They said it wouldn't. They didn't argue it ought to be automatic. So what is your scenario? No, I agree that the fairness issue is important and that you had asked the government whether a bright line should be drawn. And I just wanted to give the appellants a position on that as well. What about the position that is, we don't do it, we normally will allow it to go through if there's no objection made, right? It's not raised. But that on exceptional circumstances, we will do so. We find so that it should be dismissed on time. If the court decides that it can sui sponte address this issue, then that is the best scenario from Mr. Oliver's position. And it's probably the easiest. I realize that a bright line rule was always the easiest, but if the court thought that maybe, you know, you have to consider exceptional circumstances or you even argue for anything else. It just makes it clean. I mean, a lot of bright line rules for defendants. That's true. I only wanted to address the bright line rule the other way, where if you look initially and say it's untimely, that wouldn't be fair. That was my point. But if the court has no further questions. But you also agree it may not be fair to the government if we took the bright line the other way either. That is, we'll never, we'll never do it if there's no, if it's not raised by the government. Except that the government, the way, if you dismiss it automatically because it's untimely, then the defendant. No, no, no, you understand, I'm saying the other side of the bright line. Oh, I understand. I think that I heard perhaps Judge Wynn was just talking about, do you think that that would be a good to have the bright line is, if they don't raise untimeliness, we will not exercise sua sponte powers to dismiss. I think that is the most fair rule because the government still has the option to raise it and therefore it can be dismissed if the government raises it. Of course, at the end of the day, all you get is just review the merits. I mean, it's not like the defendant walks out on the street because of his failure to dismiss unless the merits in him prove it. Right, but I But the way you fashion the rule does determine whether or not you get to the merits in some instances. And some appellants do have meritorious issues. So, so having a rule where you actually get to the merits, I think that's the most fair rule. But that you'll always get to the merits. You think that's fair, you just do it automatically. You're going to look the merits always when the government doesn't raise the untimeliness. Yes, your honor. Do you think that's okay? All right. That's the best rule. Yes. Thank you. I see you want to make sure you weren't caught up, caught upon it. No, sir. I'm with the public. I'm with the public. This is just a case. It wasn't our case. The Fourth Circuit just asked me to. Exactly. Right. I know you did a special work for us, but we appreciate that. Well, thank you. We thank you. And counsel, thank you for the government for your very candid, I think very helpful comments here today. We appreciate that.
judges: Roger L. Gregory, James A. Wynn Jr., Albert Diaz